Gary L. PATTEN, Appellant,

v.

NORTH DAKOTA PAROLE BOARD,
Jennifer Gladden, Chairperson; David
Peterson and Ronald Bostick, Members
of the Board, Appellees.

Gary L. PATTEN, Appellant,

v.

Dick WERRE, Director of NDSP Coun-
seling Department; Winston Satran,
Warden; and Alton Lick, Director of
Institutions, Appellees.

Gary L. PATTEN, Appellant,

v.

R. James MAXSON, Jennifer Gladden
and Ronald Bostick, Individually and
as Members of the North Dakota State
Parole Board, Appellees.

Nos. 85–5313, 85–5315 and 85–5316.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 23, 1986.

Decided Feb. 10, 1986.

Gary L. Patten, pro se.

Edward F. Zuern, Bismarck, N.D., for appellees.

Before McMILLIAN, BOWMAN, and WOLLMAN, Circuit Judges.

PER CURIAM.

Gary L. Patten appeals the dismissal of his three civil rights actions brought under 42 U.S.C. § 1983, which have been consolidated for purposes of appeal. We affirm.

## I.

At the time he initiated these civil rights actions, Patten was a prisoner at the North Dakota State Penitentiary serving sentences for delivery of marijuana and for removing his sons from the state without authority. He first appeared before the North Dakota Parole Board (Board) in May 1984. The Board denied him parole, stating its reasons as: (1) insufficient time served, (2) seriousness of crime, (3) multiple counts, and (4) additional treatment required. Patten again applied for parole in May 1985, which the Board granted, but for a date later than Patten had requested. The delay, which amounted to ninety days, was attributable to a consecutive sentence for defrauding a secured creditor.

In suit 85–5313, Patten alleges that he was denied parole in 1984 without due process of law under the Fourteenth Amendment. In suit 85–5315, Patten alleges that prison officials are maintaining false records that are then used in his parole hearings in violation of his due process rights. Finally, in suit 85–5316, Patten alleges that he was denied parole in 1985 without due process. He seeks declaratory and injunctive relief as well as damages. The District Court[1] granted summary judgment for the defendants in the first action, and dismissed the other two complaints as frivolous under 28 U.S.C. § 1915(d).

## II.

### A.

In the first action (85–5313), Patten claims that the North Dakota parole scheme creates a legitimate expectation of parole and consequently a protected liberty interest. Patten then asserts that he was deprived of due process because the Board did not inform him of adverse information and failed to give him an opportunity to address it. In his complaint, he asks that the District Court declare that the North Dakota hearing scheme violates due process, that the Board inform him of all adverse information in his files, that he receive another hearing in which he can address the adverse information, and that the court require the Board to revise its hearing scheme to comply with due process. The District Court found that the North

---

1. The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota.

Dakota parole scheme does not create a protected liberty interest, and even if it did, sufficient safeguards exist to satisfy due process.

On appeal, Patten asks this Court to reverse the District Court's ruling. He argues that the statute's "shall/unless" language creates an expectation of release and consequently, due process requirements attach. N.D.Cent.Code Ann. § 12–59–07. He also claims that the District Court failed to consider the Board's rules, regulations, and practices, which he asserts give rise to a protected liberty interest. In addition, he maintains that appellees have failed to disclose all the relevant rules used in parole decisions despite repeated requests and threatened sanctions by the court.

 State statutes, rules, and regulations can create a constitutionally protected liberty interest in parole. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7–11, 99 S.Ct. 2100, 2103–06, 60 L.Ed.2d 668 (1979); *Parker v. Corrothers,* 750 F.2d 653, 655 (8th Cir.1984). A protected liberty interest is created when "particularized substantive standards or criteria ... significantly guide parole decisions" and the language is mandatory. *Id.* at 656. The question whether North Dakota has created a protected interest in parole is one of first impression for this Court. *See Matz v. Kelsch,* 638 F.2d 48, 49 & n. 4 (8th Cir.1981) (per curiam) (doubtful that North Dakota prisoner has protected interest in work release program).

 In the present case, the relevant statute reads in pertinent part:

No parole *shall* be granted to any person confined in the penitentiary or state farm *unless*:

1. He has maintained a good record at the penitentiary or state farm for a reasonable period prior to his application for

a parole and the board is convinced that the applicant will conform to all the rules and regulations adopted by said board....

N.D.Cent.Code Ann. § 12–59–07 (emphasis added). Contrary to Patten's arguments, the "shall/unless" language is not similar in substance to the mandatory language giving rise to a liberty interest in *Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2105. Unlike the Nebraska statute in *Greenholtz,* the North Dakota statute is worded in the negative, and does not require release when certain requirements are met. Rather, the statute denies parole unless certain general requirements are met. This semantic difference makes the Nebraska and North Dakota statutes substantively different. Consequently, the North Dakota statute does not create an expectation of release or a protected liberty interest in parole.

Even if such language could be construed as the mandatory *Greenholtz* type, the conditions precedent to release are not sufficiently particularized to guide the Board's discretion. "A good record" and "a reasonable period" are ambiguous terms and clearly are not quantifiable guidelines. In addition, the Board must be "convinced" of the applicant's ability to abide by the rules. This provision delegates very broad discretion to the Board. Furthermore, section 12–59–12 of the North Dakota Century Code allows the Board to reconsider any grant of parole on its own motion. Accordingly, an applicant has no specific conditions to fulfill that give rise to an expectation of release.

 North Dakota rules, regulations, and practices do not create a protected liberty interest in parole. The record shows no formal rules for parole determinations except for the Inmate Handbook.[2] The Handbook does not contain any conditions precedent to parole, but only lists the

2. Patten continues to assert that appellees have not complied fully with his discovery requests and that they have failed to disclose all the rules governing parole decisions. The record shows that appellees were less than cooperative and

punctual throughout the discovery process, but contains sworn affidavits that support appellees' position, and Patten has not indicated what the alleged undisclosed rules may say.

factors considered. Furthermore, the Handbook states that "[t]he Board is interested in [the prisoner] as an individual, and there are no hard and fast rules." Inmate Handbook at 72.

█ Accordingly, we hold that North Dakota has not created a protected liberty interest in parole, and thus Patten has no due process rights that attach to his interest in parole. Although no process is due, North Dakota nevertheless gives prisoners ample opportunity to present their cases to the Board. The Inmate Handbook provides that the applicant may appear personally, present witnesses, and be represented by an attorney. If parole is denied, the Board must state its reasons for denial. Patten had the opportunity to participate fully in these procedures. We conclude that the District Court correctly granted summary judgment in favor of appellees.

### B.

In the second action (85–5315), Patten claims additional constitutional violations in connection with the Board's denial of parole in 1984. Although the complaint is somewhat ambiguous, Patten essentially claims that prison officials maintained records that contained erroneous information. They supplied the records to the Board, which then denied him parole based on erroneous information. The District Court dismissed the complaint before service as frivolous under 28 U.S.C. § 1915(d) because Patten does not have a protected liberty interest in parole. For the reasons discussed in section II. A., *supra,* we affirm.

█ In addition, we observe that Patten's first action developed the relevant facts sufficiently to rule out the possibility of arbitrary and capricious state action. The denial of Patten's parole was based on four articulated reasons, none of which was solely determinative. Accordingly, the information that Patten claims is false was not the only basis for the denial of parole, if indeed it was any basis at all. Furthermore, Patten was denied parole only once; in May 1985 the Board granted him parole, albeit to begin on a date later than the date he requested. Consequently Patten's complaint, even if it somehow could be read to state a colorable claim, clearly is without factual support.[3]

### C.

In his third action (85–5316), Patten alleges that the Board denied him due process in May 1985 by failing to give him any reason for denying his specific parole application and because Patten's co-defendant had received parole earlier. The District Court dismissed Patten's complaint before service as frivolous pursuant to section 1915(d) on the ground that he does not have a protected liberty interest in parole. For the reasons discussed in section II. A. of this opinion, we hold that the District Court clearly was correct in dismissing on this ground Patten's claim that he was not given any reason for the denial of his specific parole application. Again, this is a due process claim, the North Dakota parole scheme creates no liberty interest, and thus there is nothing to which due process can attach.

Though the observation is unnecessary to our decision, we note that Patten's complaint fails to mention one important detail: the Board granted him parole at his May 1985 hearing. The Board technically rejected Patten's application, but did grant him parole to begin at date later than that requested and to a community different from the one to which he wished to be released. Apparently the Board chose a different community to keep Patten away

---

**3.** Patten also argues on appeal that prison officials denied him due process when they allegedly terminated him from a counseling program. Even after giving Patten the benefit of the rule that *pro se* complaints are to be liberally construed, we conclude that in none of his complaints can we find this claim presented. Because the District Court thus did not have an occasion to consider this claim, we will not consider it on appeal. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Furthermore, it is doubtful whether Patten could show a constitutionally protected interest in a counseling program. *See Matz,* 638 F.2d at 49.

from his former wife who was afraid Patten might take their children out of the state again without permission. The record shows that Patten's later release was because of a ninety-day consecutive sentence for defrauding a secured creditor. The Board mentioned the consecutive sentence when it notified Patten that parole was granted and would begin on September 5, 1985. We mention this only to suggest that Patten's claim still would be frivolous even if he had a protected liberty interest in parole, which, as we already have held, he does not.

Patten's second claim, which sounds in equal protection, is also meritless. That co-defendants receive different parole dates does not violate a right of the one who gets the later date. *Melvin v. Petrovsky*, 720 F.2d 9, 12 (8th Cir.1983). Patten has not alleged an inconsistent application of the Board's rules or classifications as did the federal prisoner in *Melvin*. We conclude that the District Court's dismissal of this claim as frivolous should be affirmed, although we rest this conclusion on equal protection rather than due process analysis.

### III.

For the reasons set forth above, we affirm the judgment of the District Court in all three cases.