**Troy DACE, Appellant,**

v.

**George MICKELSON, Harold Shunk, and Jon Erickson, Appellees.**

No. 85–5126.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1986.

Decided July 22, 1986.

Rehearing Granted Oct. 28, 1986.

Michael J. Schaffer, Sioux Falls, S.D., for appellant.

John W. Bastian, Asst. Atty. Gen., Pierre, S.D., for appellees.

Before ARNOLD and FAGG, Circuit Judges, and OLIVER,* Senior District Judge.

ARNOLD, Circuit Judge.

Troy Dace, an inmate at the South Dakota State Penitentiary, brought this action under 42 U.S.C. § 1983 against the three members of the South Dakota Board of Pardons and Paroles. Dace contends that the Board has deprived him of liberty without due process by denying his application for parole without giving reasons. The District Court dismissed Dace's complaint for failure to state a claim, holding that Dace had no "liberty interest" in parole. We reverse and remand the case to the District Court, concluding that South Dakota parole regulations do create a liberty interest.

## I.

Dace is presently serving two concurrent ten-year sentences for convictions for aggravated assault and attempted rape. He began serving these sentences in the South Dakota State Penitentiary on June 7, 1982. Dace alleges, and the Board concedes, that he appeared before the Board on January 27, 1984, when he first became eligible for parole, and that the Board denied parole without stating the reason for its denial. Dace requested that the Board provide an explanation for the decision, but was told that the Board did not give reasons for denying parole.[1] Dace filed suit on September 28, 1984; his *pro se* complaint seeks declaratory and injunctive relief.[2]

## II.

■ In general, "[l]iberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983), *citing Meachum v. Fano,* 427 U.S. 215, 223–27, 96 S.Ct. 2532, 2537–40, 49 L.Ed.2d 451 (1976). Dace attempts to argue that the Due Process Clause itself creates a liberty interest in parole. As we recently indicated in *Clark v. Brewer,* 776 F.2d 226, 230 (8th Cir. 1985), this argument appears to be foreclosed by *Hewitt.* See 459 U.S. at 466–468. On the other hand, it is clear that state laws governing parole can create a liberty interest. See *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 11–16, 99 S.Ct. 2100, 2105–08, 60 L.Ed.2d 668 (1979). We therefore turn to consider possible state law bases for a liberty interest.

■ "[A] State creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). This the State may do through its statutes, through administrative regulations, or through official policy pronouncements that are intended to guide the exercise of discretion. *Green v. Black,* 755 F.2d 687, 688 (8th Cir. 1985); *Parker v. Corrothers,* 750 F.2d 653, 660–61 (8th Cir.1984). The key question is whether the statutes, regulations, or policy statements articulate substantive standards or criteria that guide the officials' exercise of discretion. *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747, *citing Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring). An

---

* The Hon. John W. Oliver, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The January 27, 1984 parole denial is the only Board action mentioned in Dace's *pro se* complaint. However, Dace's appointed counsel on appeal informs us that Dace has appeared before the Board twice more, on September 27, 1984 and May 24, 1985. On both occasions the Board again denied Dace's request for parole without giving any reason.

2. Specifically, Dace requested that the court order his "emmidiate [sic] parole hearing and that it be governed by guidelines ordered by this court to protect my constitutional rights, as created by South Dakota law." Complaint, § V.

important factor that must be considered in determining whether a state law meets this test is whether the law contains language of a mandatory character, such as "shall" or "must," like that in the Nebraska statute held to establish a liberty interest in *Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2105. *Clark,* 776 F.2d at 230; see also *Parker,* 750 F.2d at 656, 661. To be contrasted with the situation where state law meets this test by limiting the manner in which officials exercise their discretion is that where state law, "having no definitions, no criteria, and no mandated 'shalls,'" confers "'unfettered discretion'" on officials, creating no liberty interest. *Dumschat,* 452 U.S. at 466, 101 S.Ct. at 2465.

■ Examining South Dakota's parole statute in light of these principles, we agree with the District Court that the statute does not create a liberty interest. The statute, S.D. Comp. L. § 24–15–8, provides:

> When an inmate becomes eligible for parole, he shall be called before the board of pardons and paroles to personally present his application for parole. The board *may* issue an order to the warden of the penitentiary that the inmate shall be paroled if it is satisfied that:
>
> (1) The inmate has been confined in the penitentiary for a sufficient length of time to accomplish his rehabilitation;
>
> (2) The inmate will be paroled under the supervision and restrictions provided by law for parolees, without danger to society; and
>
> (3) The inmate has secured suitable employment or beneficial occupation of

his time likely to continue until the end of the period of his parole in some suitable place within or without the state where he will be free from criminal influences.

> The board shall fix the time of parole for an inmate.

(Emphasis supplied). Thus, the statute establishes that if the Board determines that the criteria in sections (1)–(3) are met, it "may," rather than "shall" or "must," order the warden to parole an inmate; it provides no substantive criteria to guide the discretion the Board is authorized to exercise after it determines that the requirements of sections (1)–(3) are met.[3]

■ However, we conclude that the administrative regulations governing parole in South Dakota do provide substantive guidance for Board decisionmaking in the realm which the statute leaves to Board discretion. We refer specifically to A.R. S.D. 17:60:02:01, which states:

> A parole hearing before the board shall provide to each inmate whose application is considered an opportunity to present in person to the board a statement of his or her needs, desires, problems, evaluation of present progress and plans for the future. The Board *shall consider* the presentation by the inmate; *shall review* all available history, medical, social and psychological information, past and present difficulties, institutional adjustment and progress of the inmate; and *shall consider* treatment possibilities or other plans for the inmate.

(Emphasis supplied).[4] Thus, the regulation establishes that the Board must take a

---

**3.** South Dakota, following the example of Missouri, see *Williams v. Missouri Board of Probation and Parole,* 661 F.2d 697 (8th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982), and *Gale v. Moore,* 587 F.Supp. 1491, 1493 (W.D. Mo. 1984), amended its parole statute as of July 1, 1985 in an effort to ensure that no liberty interest was created by the statute. S.D. Comp. L. § 24–15–8 now begins, "When an inmate becomes eligible for *consideration for* parole ..." (emphasis supplied), and ends, "Neither this section or its application may be the basis for establishing a constitutionally protected liberty, property or

due process interest in any prisoner." Since we conclude that no liberty interest was created under the original version of the statute, we devote no analysis to the effect of the amendments on the statute. However, we note that the amendments may have some effect upon the continuing validity of the regulation that we hold to create a liberty interest. See p. 578, *infra.*

**4.** Another regulation, ASDR 17:60:02:07 lists 15 additional factors that the Board "may" consider; because the Board is not required to consider these factors, ASDR 17:60:02:07 does not pro-

number of substantive criteria into account in determining whether to grant parole.

It is true that there is no mandatory language in the statute requiring the Board to grant parole if it finds some particular number or combination of these criteria fulfilled. However, such language is not a prerequisite to the creation of a liberty interest; its import is that it serves as an indicator of whether substantive criteria limit official discretion, the ultimate test of whether a liberty interest has been created. See discussion *supra*, p. 576. This test is met here because the regulation, by requiring the Board to take the enumerated factors into account in making the decision whether to grant or deny parole, places substantive limitations on the Board's discretion. See *Olim*, 461 U.S. at 249, 103 S.Ct. at 1747. The Board does not, under this regulation, exercise the unfettered discretion that typifies instances in which parole or clemency laws have been found not to create a liberty interest, see, *e.g.*, *Dumschat*, 452 U.S. at 466, 101 S.Ct. at 2465; *Peck v. Battey*, 721 F.2d 1157, 1159 (8th Cir. 1983). Hence we conclude that Dace has a liberty interest in parole.[5]

▮▮▮ We turn, then, to the question of whether the Board provided Dace with the process which was "due." The Supreme Court's decision in *Greenholtz* makes clear that while an inmate who has a liberty interest in parole is not entitled to the full panoply of procedural protections that accompany a criminal trial, the inmate does deserve an opportunity to be heard and, if parole is denied, a statement of the re-

spects in which he or she falls short of qualifying for parole. 442 U.S. at 14–16, 99 S.Ct. at 2107–08. The latter requirement ensures that the decisionmaker will devote some thought to the decision and, perhaps most importantly, that the inmate will be apprised of what changes, if any, he or she may make to improve the likelihood of parole. *Id.* at 15, 99 S.Ct. at 2107, *citing Franklin v. Shields*, 569 F.2d 784, 800 (4th Cir. 1977) (en banc), *cert. denied*, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978). Accordingly, we hold that in failing to state its reasons for denying Dace's parole application, the Board violated Dace's right to due process.[6]

### III.

▮▮▮ We conclude that the District Court erred in dismissing Dace's complaint for failure to state a claim. Since there appears to be little in the way of factual controversy here, the principal task of the District Court on remand is likely to be fashioning an appropriate remedy. Although this is a matter for the District Court in the first instance, we observe that the proper remedy may not be the new parole hearing that Dace requests; it may instead be sufficient to order the Board to review the record of its earlier hearings and deliberations and issue a statement of reasons for denying parole. We further note that the propriety of injunctive relief directed towards future parole decisions may be affected by amendments to the South Dakota parole statute that became

---

vide any additional basis for an inmate liberty interest in parole.

5. Dace also argues that the District Court erred in dismissing his complaint before he had the opportunity to conduct discovery concerning Board policy statements that might provide a basis for a liberty interest. Because we hold that ARSD 17:60:02:01 creates a liberty interest, we find it unnecessary to reach this issue.

6. Dace also contends that his due-process rights were infringed by the presence on the Board of South Dakota Assistant Attorney General Jon Erickson because at the time of his parole hearing Dace had a habeas corpus suit pending against, among others, the South Dakota Attor-

ney General. However, Dace concedes that Erickson did not personally participate in this suit. While we have noted that the presence of a member of the Attorney General's office on the Board may pose due-process problems, we did so in a case where the official had actually been involved in litigation opposing the inmate. See *Flittie v. Erickson*, 724 F.2d 80 (8th Cir. 1983). We hold that since Erickson did not participate in Dace's suit, Erickson did not have interests adverse to Dace so direct, personal, and substantial as to give rise to a due-process violation. See *Aetna Life Insurance Co. v. Lavoie*, — U.S. ——, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986).

effective in July, 1985. See note 3, *supra*. Because the amended statute states that "[n]either this section or its application may be the basis for establishing a ... due process interest in any prisoner," the current validity and interpretation of ASDR 17:60:02:07 are open to question. We reiterate, however, that these are questions to be resolved by the District Court. Similarly, if on remand defendants contend that the amended statute affects the validity and interpretation of the regulation, plaintiff will be free to argue, in reply, that the amended statute, coming into effect as it did after the events pleaded in Dace's complaint, should not apply to his case. See *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Parker v. Corrothers*, 750 F.2d at 661.

We are grateful to appointed counsel for his diligent service to his client and to the Court.

For the reasons stated above, the judgment of the District Court is reversed, and the cause remanded for further proceedings consistent with this opinion. On remand, the District Court should consider appointing counsel for Dace. Counsel appointed for Dace on this appeal could be requested to undertake this assignment. After counsel is appointed, he should be given an appropriate opportunity to amend the complaint, if desired, and conduct discovery.

FAGG, Circuit Judge, dissenting.

The pivotal issue presented in this case is whether South Dakota has established a protectable liberty interest in either a statute or an administrative regulation governing the parole of prisoners. I completely agree with the court that no protectable liberty interest in parole can be found in the statute. *See supra* at 576–577. I cannot, however, join in its determination that an administrative regulation, A.R.S.D. 17:60:02:01, provides Dace with such a liberty interest. *Supra* at 578.

The regulation before us requires that the Board provide a hearing for each inmate who applies for parole. Upon granting a parole hearing, the Board shall consider the inmate's presentation and shall review available relevant information concerning the inmate's application as well as consider treatment possibilities or other plans for the inmate. The court suggests that in providing a number of mandatory procedures governing parole hearings, South Dakota has created a protectable liberty interest in parole. I disagree.

A state creates a protectable liberty interest by placing *substantive* limitations on official discretion. In order to establish a liberty interest in parole, Dace must demonstrate that particularized standards or criteria guide the exercise of discretion by prison officials in making parole determinations. *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); *Clark v. Brewer*, 776 F.2d 226, 230 (8th Cir.1985). "If the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' the State has not created a constitutionally protected liberty interest." *Olim*, 461 U.S. at 249, 103 S.Ct. at 1747 (quoting *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring)).

As the court observes, there is no mandatory language in the South Dakota regulation that requires the Board to grant parole if any of the criteria set out in the regulation are fulfilled. *Supra* at 577. Contrary to the court's analysis, however, I believe that absent any pronouncement that a prisoner will be released upon the fulfillment of certain conditions, a prisoner has no protectable liberty interest in parole. *See, e.g., Patten v. North Dakota Parole Board*, 783 F.2d 140, 142–43 (8th Cir. 1986) (per curiam) (No liberty interest exists in Inmate Handbook where it "does not contain any conditions precedent to parole, but only lists the factors con-

sidered."); *Nash v. Black*, 781 F.2d 665, 668 (8th Cir. 1986) (Prisoner failed to establish liberty interest in furlough or transfer where he presented no statute, regulation, or policy pronouncement that required prison officials to grant requests for furlough or transfer upon the prisoner's fulfillment of specified criteria.).

Hence, "[i]f the procedures required impose no significant limitation on the discretion of the decisionmaker, the expectation of a specified decision is not enhanced enough to establish a constitutionally protected interest in the procedures." *Hogue v. Clinton*, 791 F.2d 1318, 1324 (8th Cir. 1986) (quoting *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984)). The procedures governing parole hearings in the South Dakota regulation before us, although mandatory, do not in any way limit prison officials' discretion in their ultimate parole determinations.

The court appears to base its finding of a liberty interest on the premise that the Board must provide a hearing to parole applicants and must consider certain factors before making its parole decisions. In my view, these requirements governing parole hearings are nothing more than simple procedural guidelines.

> The creation of procedural guidelines to channel the decisionmaking of prison officials is, in the view of many experts in the field, a salutary development. It would be ironic to hold that when a State embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts, while States that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause.

*Hewitt v. Helms*, 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). South Dakota's adoption of procedural guidelines alone does not create a liberty interest. *Id. See also Parker v. Corrothers*, 750 F.2d 653, 657 (8th Cir. 1984).

Accordingly, I would affirm the district court's dismissal of Dace's complaint.