Dana IVY, Appellant,

v.

Dick MOORE; Ann Austermann; George
Lombardi; Paul Caspari, Appellees.

No. 92–3158.

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1993.

Decided Aug. 2, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 8, 1994.*

Robert C. Cook, St. Louis, MO, argued, for
appellant.

Peter J. Krane, St. Louis, MO, argued, for
appellee.

Before BOWMAN, Circuit Judge,
HEANEY, Senior Circuit Judge, and
BEAM, Circuit Judge.

BOWMAN, Circuit Judge.

Dana Ivy, a Missouri prisoner, brought
this 42 U.S.C. § 1983 action alleging that the
defendants, all employees of the Missouri
Department of Corrections, had violated his
rights under the Fifth, Eighth, and Four-
teenth Amendments. The case was tried to
a jury, with the trial court[1] entering judg-
ment as a matter of law on some of Ivy's
claims and entering judgment in accordance
with the jury's verdicts for the defendants on
Ivy's remaining claims. His motion for a
new trial having been denied, Ivy appeals.
We affirm.

The background of the case can be stated
briefly. On December 8, 1988, while incar-
cerated at the Missouri Eastern Correctional
Center, Ivy was charged with a prison con-
duct violation for giving false information to
a prison guard. Ivy denied making the false
statement, asserting that he was in the pris-
on gym during the episode and that the
officer must have confused him with another
inmate.

A disciplinary hearing was conducted by a
three-member team on December 12 and 13,

---

* Judge McMillian would grant the suggestion for
  rehearing en banc.

1. The Honorable Frederick R. Buckles, United
   States Magistrate Judge for the Eastern District

of Missouri, who handled the case by consent of
the parties pursuant to 28 U.S.C. § 636(c)(1)
(1988).

1988. Defendant Ann Austermann[2] chaired the hearing team. The team heard the charging officer's written report and Ivy's testimony. When Ivy offered into evidence a recreation equipment sign-out sheet from the gym as an alibi document, Ms. Austermann called for a recess in order that she might investigate the authenticity of the document. The next day, when the hearing reconvened, Austermann reported her findings to Ivy and the team. The document was not admitted into evidence. The hearing team then heard from three of Ivy's witnesses. After considering all the evidence, the hearing team found Ivy guilty of the conduct violation.

As punishment for this conduct violation, Ivy was placed in a Phase II special adjustment unit ("SAU"). Ivy eventually spent 237 days in the Phase II program. Appellees assert this long stay was attributable to Ivy's inability to modify his behavior and to further conduct infractions. Ivy filed a grievance, which was considered and denied by the prison officials who, in addition to Austermann, are named as the defendants in this lawsuit. The grievance was denied. Ivy then brought the present § 1983 action.

On appeal, Ivy asserts that the trial court erred or abused its discretion in a variety of ways. Having carefully reviewed the case, we conclude that all of the issues Ivy raises lack merit, and that only one of them warrants discussion. We turn to that issue.

As part of a broad attack on the District Court's grant of judgment as a matter of law on certain of his claims, Ivy points to the evidence showing that Austermann, the chairperson of the hearing team, recessed the disciplinary hearing and personally investigated Ivy's alibi defense. Ivy argues that this investigation resulted in a less than impartial disciplinary panel and, thus, did not comport with the mandates of *Wolff v. McDonnell,* 418 U.S. 539, 592, 94 S.Ct. 2963, 2992, 41 L.Ed.2d 935 (1974) (Marshall, J., concurring) ("an impartial decision-maker is a fundamental requirement of due process"). We disagree.

Austermann's investigation was not done to prepare for prosecution of the charge. Rather, it took place during a recess in the disciplinary hearing, and it was undertaken to determine whether Ivy's alibi defense was, in fact, true. The nature of prison disciplinary proceedings compels the courts to give wide latitude to prison officials in the manner in which they conduct these proceedings for they "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Id.* at 561, 94 S.Ct. at 2977.

Ivy relies upon *Malek v. Camp,* 822 F.2d 812 (8th Cir.1987). We find *Malek* without force in this case. In *Malek,* we held the plaintiff's allegation that the hearing chairman was biased stated a claim for relief under § 1983. *Id.* at 815. Malek alleged that the chairman of the disciplinary panel had knowledge that several days prior to the hearing Malek had prepared and filed a suit on behalf of another inmate naming the chairman as a defendant. The Court, referring to the issue as a "close" question, *id.* at 816, found the situation to be one where the plaintiff was alleging a "personal bias." In contrast, here there is nothing in the evidence to suggest that Austermann was biased against Ivy. On this record, we are unable to find that Austermann's investigation gave her an interest adverse to Ivy's "so direct, personal, and substantial as to give rise to a due-process violation." *Dace v. Mickelson,* 797 F.2d 574, 578 n. 6 (8th Cir. 1986), *vacated on other grounds,* 816 F.2d 1277 (1987) (en banc). We conclude that the trial court did not err in granting the defendants judgment as a matter of law on this claim.

Finding this appeal wholly without merit, we affirm the judgment of the trial court.

HEANEY, Senior Circuit Judge, dissenting.

Were it any less clear that Dana Ivy's constitutional right to due process was violated I might be inclined to go along with the

---

2. Although Ms. Austermann has since married and now uses her married name, Ann Barnhill, the Court will refer to her as Ann Austermann in order to remain consistent with the style of the case and to avoid confusion.

majority. The facts and the law, however, leave me with no option but to dissent. Virtually all of the touchstones in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the seminal case on inmates' due process rights in prison disciplinary proceedings, are implicated here: an inmate's right to have his case heard before an impartial disciplinary panel, his right to call witnesses, and his right to present documentary evidence in his defense.

The background of this case, although capable of "brief" recitation as the majority notes, is worth repeating. On December 8, 1988, Ivy was charged with the prison conduct violation of giving false information. According to the reporting officer, Harold Martin, Ivy was in the prison yard around 7:00 p.m. and claimed to have "just come off a visit." A check of the visitor's log by another officer indicated that Ivy had no visitors at that time. Ivy responded to the false information charge by stating that he had been in the gym since chow and could prove it.

A three-member disciplinary committee was convened December 12, 1988, to hear Ivy's case. Ann Austermann, a corrections caseworker, chaired the panel. After hearing the charging officer's written report of the incident, Ivy attempted to offer into evidence a copy of a recreation equipment sign-out sheet that would have confirmed his version of the events that he was in the gym at the time he was reportedly in the prison yard. Austermann promptly recessed the hearing to "investigate the substance" of the sign-out sheet. II Trial Tr. at 18; Depo. at 40, 45.

Austermann's investigation consisted of a telephone conversation with Officer Finley, a prison officer with knowledge of the prison's equipment sign-out sheets, who had possession of the original sheet on which Ivy's name appeared. Finley explained that Ivy was one of the top ten inmates listed on the sign-out sheet for December 8, and that, consistent with routine prison procedure, an inmate worker, not a staff person, filled the

sheet out in pencil. Finley explained further that no times were noted on the sheet but that the sheet was available immediately after chow around 6:00 p.m. Austermann never viewed the document herself. She was merely told of its contents by Finley, and relayed this information to the other committee members when the hearing reconvened the next day. Finley never testified in Ivy's presence, and the sign-out sheet was never admitted into evidence. None of the committee members ever viewed the document.

Three witnesses whom Ivy listed on a witness request form provided by the prison were not called to testify when the hearing reconvened the next day. II Trial Tr. at 192–93. Witness statements were not taken from these witnesses either. Instead, for reasons that are not at all clear, three other witnesses were present with Ivy at the hearing.

The Supreme Court in *Wolff* held that minimum requirements of procedural due process must be observed before a prisoner may be deprived of good-time credit or given the harsh punishment of severely restricted confinement. 418 U.S. at 539, 94 S.Ct. at 2963. Specifically, prison authorities must (1) give advance written notice of the claimed violation; (2) permit the inmate to call witnesses and present documentary evidence in his behalf; and (3) provide a written statement as to the evidence relied upon and the reasons for the disciplinary action taken.[1] In addition to these protections, the Court made clear that inmates must be afforded the benefit of an impartial disciplinary review panel "so as to eliminate any possibility that subtle institutional pressures ... affect the outcome of disciplinary cases." *Id.* at 592, 94 S.Ct. at 2992 (Marshall, J., concurring). "[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Id.; see also Morrissey v. Brewer*, 408 U.S. 471, 486, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).

---

1. Because of the special concerns of institutional safety, however, other traditional due process rights, such as the right to confront and cross-

examine adverse witnesses and the right to counsel, are not mandated. *Wolff*, 418 U.S. at 567, 570, 94 S.Ct. at 2980, 2981.

There can be no question that Austermann tainted the disciplinary panel's review of Ivy's case when she independently investigated the nature of the equipment sign-out sheet that Ivy attempted to offer into evidence. Austermann interrogated Officer Finley, a fact witness, outside of the presence of both Ivy and the other committee members. To make matters worse, she accepted wholesale the information he relayed to her over the telephone without ever inspecting the sheet.[2] Implicit in the rule that inmates have the general right to call witnesses at disciplinary proceedings is the notion that their physical presence and unadulterated testimony is crucial to a fair determination of the facts. The same may be said of the testimony of other witnesses, *e.g.*, prison officials, whose knowledge of relevant facts is critical to a full and fair consideration of misconduct charges against an inmate. Officer Finley should have been called to the hearing and been required to testify under oath. Indeed, failure to do so was in violation of Missouri's prison regulations, which provide that "[t]he committee chairperson shall call witnesses available and necessary to the charge being reviewed...." Missouri Dept. of Corrections and Human Resources, Inmate Rules § 20–117.030(5)(F) [hereinafter Inmate Rules]. Although there is clearly more at issue here than mere appearances, doing so, at the very least, would have erased any suggestion of impropriety. Instead, Austermann, while chairing the committee charged with deciding whether Ivy would remain in the general prison population or spend 237 days in a special adjustment unit deprived of virtually of all of his movement, chose to investigate Ivy's alibi herself.

The majority's claim that her investigation "was not done to prepare for prosecution of the charge," and therefore cannot be construed as part of the investigation of the charges against Ivy is a distinction without a difference. More, it is flatly contrary to *Wolff*'s edict that "no member of the disciplinary board [be] ... involved in the investigation or prosecution of the particular case, *or [have] any other form of personal involve-*ment in the case." 418 U.S. at 592, 94 S.Ct. at 2992 (emphasis added). What the *Wolff* Court had in mind was that a person's right to a fair hearing absolutely cannot be compromised by the investigative efforts of a member of a disciplinary review board whose adverse interests are "direct, personal, and substantial." *Dace v. Mickelson,* 797 F.2d 574, 578 n. 6 (8th Cir.1986), *vacated on other grounds,* 816 F.2d 1277 (1987) (en banc). Other courts have recognized this basic tenet of due process as well. *See Powell v. Ward,* 392 F.Supp. 628, 633 (S.D.N.Y.1975) (implicit in the notion of fairness in the due process clause is that a hearing officer should not have been an investigative officer or witness). In addition to running afoul of the *Wolff*'s due process requirements, Austermann's conduct was in direct violation of Missouri's prison regulations, which explicitly provide that "[a]ny staff member who was actively involved in conducting an investigation (questioning inmates, seeking facts, writing incident reports, etc.) *shall not sit as a member of the Adjustment Board.*" Inmate Rules § 20–117.030(8)(A) (emphasis added).

Chief among the other due process requirements outlined in *Wolff* is the right of an inmate to call witnesses and to present documentary evidence in his behalf. Recognizing that the right to call witnesses is necessarily circumscribed by the penological need to conduct prison hearings without disruption, the Court in *Wolff* held that an inmate should be allowed to call witnesses and present documentary evidence when doing so would not be unduly hazardous to institutional safety or correctional goals. 418 U.S. at 566, 94 S.Ct. at 2979. The Court further observed that, although not prescribed, "it would be useful for [a disciplinary review panel] to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.*

Exactly why the three witnesses Ivy originally requested were not called at the hearing is somewhat of a mystery. The defendants failed, both in their briefs and at trial,

---

2. The other panel members neither sought nor attempted to locate the original sign-out sheet to verify the information reported by Austermann.

to offer a satisfactory explanation for why the witnesses were not present. There is no claim—nor could there be, it appears—that the witnesses were not called out of concern for institutional safety. Nor is there any indication that Ivy waived his right to have these witnesses present with him. Contrary to *Wolff*'s reasoned recommendation that inmates be given a written explanation of a panel's refusal to call a witness, and Missouri's inmate rule that "[c]ommittee reasons for failing to call for any witnesses requested by the inmate shall be recorded," no written explanation was given in this case. *See* Inmate Rules § 117.030(5)(F).

Ivy was deprived as well of his right to present documentary evidence. The copy of the equipment sign-out sheet Ivy attempted to produce at the hearing was not only excluded from admission into evidence, it was never reviewed by any of the panel members. Failure by a disciplinary review committee to review *any* document offered by an inmate is cause for concern. Failure to review the single most important piece of evidence—in this case, an alibi document supporting Ivy's claim that he was in the gym at the time he was reportedly seen in the prison yard—is unconscionable. It is especially egregious given the fact there was some question as to whether the sign-out sheet, which is typically filled out by inmate-workers, was tampered with. A disciplinary action report, for example, noted that "the list is signed by inmates, not staff, and is written in pencil so names can be erased." Ivy's App. at 202. Prison Superintendent, Paul Caspari, responding to Ivy's grievance application, commented that the panel was "advised by recreation staff that [the sign-out sheet] is maintained by residents and is not totally accurate...." *Id.* at 197. Given the plain concern about the accuracy of the sheet, one would think that the committee members would have taken advantage of the opportunity to review the original document. For inexplicable reasons, they did not.

Because I believe that Ivy was denied his constitutionally protected right to an impartial hearing officer, his right to call witnesses, and his right to present documentary evidence in his defense, I would remand this case to the district court with directions to determine the appropriate relief to which Ivy is entitled.