**Troy DACE, Appellant,**

**v.**

**George MICKELSON, Harold Shunk, and Jon Erickson, Appellees.**

**No. 85–5126.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1987.

Decided April 28, 1987.

Opinion on Denial of Rehearing June 19, 1987.

---

Michael J. Schaffer, Sioux Falls, S.D., for appellant.

John W. Bastian, Asst. Atty. Gen., Pierre, S.D., for appellees.

Before LAY, Chief Judge, HEANEY, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, and MAGILL, Circuit Judges.

LAY, Chief Judge.

Troy Dace is serving two concurrent ten year sentences in the South Dakota State Penitentiary for aggravated assault and attempted rape. On January 27, 1984, Dace became eligible for parole and he appeared before the South Dakota Board of Pardons and Parole (the Board). The Board denied Dace's request for parole giving no reason for the denial.

Dace then brought this 42 U.S.C. § 1983 action in federal district court contending that the Board deprived him of a liberty interest without due process of law in violation of the fourteenth amendment. The district court [1] dismissed his claim on the ground that the South Dakota statute, S.D. Codified Laws Ann. § 24–15–8 (1979), and regulations, S.D.Admin.R. 17:60:02:01–:09 (1979), governing parole did not provide any liberty interest and that therefore Dace was not entitled to assert a lack of due process. A panel of this court reversed the district court's dismissal, *Dace v. Mickelson*, 797 F.2d 574 (8th Cir.1986), and this court en banc granted a rehearing. We now vacate the panel's decision and affirm the district court.

In *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S.

---

1. The Honorable John B. Jones, United States District Court for the District of South Dakota, presiding.

1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court held:

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

442 U.S. at 7, 99 S.Ct. at 2104.

■ *Greenholtz,* however, established that a state may create a liberty interest in parole by enacting a statute which instills in an inmate an "expectancy of release." *Id.* at 12, 99 S.Ct. at 2106; *see also Parker v. Corrothers,* 750 F.2d 653, 655 (8th Cir. 1984); *Evans v. Dillahunty,* 662 F.2d 522, 524 (8th Cir.1981). The court further held that when a liberty interest in parole is created by the state, minimal due process considerations require that when parole is denied the board must inform the inmate of the reasons he falls short of qualifying for parole. *Greenholtz,* at 16, 99 S.Ct. at 2108.[2]

■ In *Parker v. Corrothers,* this court reviewed leading Supreme Court and Eighth Circuit cases [3] and concluded:

> These cases indicate that there are two standards which determine whether a statute creates a protected liberty interest in parole: (1) does the statute contain particularized substantive standards or criteria which significantly guide parole decisions; and (2) does the statute use mandatory language similar in substance or form to the Nebraska statute's language at issue in *Greenholtz* ?

750 F.2d at 656; *see also Nash v. Black,* 781 F.2d 665, 668 (8th Cir.1986) (*Parker* test adopted in analyzing Missouri Department of Corrections' refusal to transfer prisoner or to consider him for furlough). The same standards apply to a review of a state rule, regulation, or practice to find an expectancy of release. In determining whether a statute or regulation provides a liberty interest, the court must decide whether that state has placed "substantive limitations on official discretion." *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747 75 L.Ed.2d 813 (1983). "An inmate must show 'that particularized standards or criteria guide the State's decisionmakers.' " *Id.* (quoting *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring)). As the *Olim* court stated: "If the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all' the State has not created a constitutionally protected liberty interest." *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747 (quoting Justice Brennan's concurring opin-

---

**2.** When Dace requested that the board provide an explanation for its decision, the Board responded that its policy was to refrain from giving reasons for denial of parole. Regardless of whether due process is required under the Constitution, the failure of a parole board to provide reasons for its denial of parole can be counterproductive, at least in some instances, to the state's interest. As stated by the Fourth Circuit in *Franklin v. Shields,* 569 F.2d 784 (4th Cir.1977), *cert. denied,* 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978):

> In many instances, by furnishing the reasons for parole denial, the Board can instruct the prisoner about the changes that are expected of him if he is to meet the criteria for release. As the record reveals, however, there are some prisoners who are not considered fit for parole because of such a factor as a long

history of recidivism. These prisoners are not in a position to remedy their deficiencies even if the Board states its reasons in writing. Nevertheless, a statement of reasons is important, for it will show that the Board has not acted arbitrarily.

569 F.2d at 797.

**3.** *See Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981); *Greenholtz,* 442 U.S. 1, 99 S.Ct. 2100; *Evans v. Dillahunty,* 662 F.2d 522; *Williams v. Missouri Bd. of Probations & Parole,* 661 F.2d 697 (8th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982).

ion in *Dumschat,* 452 U.S. at 466–67, 101 S.Ct. at 2465).

■ To satisfy the first prong of the *Parker* test, the parole statute must contain "particularized substantive standards or criteria which significantly guide parole decisions." *Parker,* 750 F.2d at 656. Substantive standards are specific, objective, measurable criteria such as length of time served, prior criminal history, seriousness of the offense, any disciplinary reports, and existence of any detainers filed against the inmate. *See, e.g., id.,* at 658. On the other hand, general factors to be taken into consideration by a parole board which do not rise to the level of substantive guidelines include general sociological and background information such as family history, education, progress in rehabilitation programs, and ability to adjust to life outside prison. Although these are important considerations, they are subjective in nature and do not place substantive limitations on prison officials' discretion in any measurable way.

■ Even if substantive guidelines are to be considered, however, unless these guidelines limit the parole board's discretion to release the prisoner, no liberty interest in parole is established. *See id.,* at 656. In other words, for a state to create a protectible liberty interest the statute or regulation must *require* release upon satisfaction of the substantive criteria listed. Such a directive may be found where the state uses language of a mandatory character, such as "shall," "will," or "must." *Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *see, e.g., Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2106 (parole board "shall" release inmate "unless" one of four criteria is met and board believes that release should be deferred); *Parker,* 750 F.2d at 657 ("while the presence or absence of mandatory language is not necessarily talismanic, it is an important factor in determining whether a parole statute creates a liberty interest"); *Evans,* 662 F.2d at 525 ("important factor

has been the presence or absence of mandatory language"); *see also, e.g., Boothe v. Hammock,* 605 F.2d 661, 663–64 (2d Cir. 1979). While this mandatory language is usually found in a "shall * * * unless" or similar format,[4] several other forms have been found sufficient to satisfy the mandatory language requirement. *See Parker,* 750 F.2d at 658 ("it is the policy" of the board to release inmates "unless" the board believes release should be deferred for any of several reasons); *see also Mayes v. Trammel,* 751 F.2d 175, 178 (6th Cir. 1984) (board "operates under the presumption" that each prisoner is a worthy candidate for parole and "presumes he will be released" when first eligible, but parole "may" be denied "if" certain factors are met); *but see Wright v. Trammell,* 810 F.2d 589 (6th Cir.1987) (per curiam) (new rule makes parole release purely discretionary).

■ The mere use of discretionary language, however, is insufficient to establish a liberty interest. To create a liberty interest in the context of a parole release statute, regulation, or rule, it is essential that the prisoner's *release* be mandated in order to fulfill the requirements of our *Parker* test. *See, e.g., Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2106 (board *"shall* order [prisoner's] *release "*); *Parker,* 750 F.2d at 658 ("it [is] the *policy* of the Board to order [prisoner's] *release "*); *Evans,* 662 F.2d at 526 ("such prisoner *shall* be *released "*); *Williams,* 661 F.2d at 698 ("the board *shall release "* prisoner) (emphasis added). If the statute, rule, or regulation only mandates that the state officials follow certain procedures or take into account certain factors, but specifically provides that the prisoner's release is nevertheless discretionary with the board, as evidenced by the use of discretionary language, then no protected liberty interest has been created. *See, e.g., Gale v. Moore,* 763 F.2d 341, 343 (8th Cir.1985) (amended Missouri parole statute requiring consideration of certain substantive criteria but which also provides

4. *E.g., Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2106; *Williams v. Missouri,* 661 F.2d 697, 698 (8th Cir.1981) (parole board "shall" release in-

mate "when" there is a reasonable probability that prisoner can be released without detriment to community or to himself).

that the parole board "may in its discretion release a prisoner" does not create a liberty interest); *Parker*, 750 F.2d at 656–57 (Arkansas statute requiring consideration of certain criteria but which provides that the parole board "may release" prisoner creates no liberty interest). We now turn to the relevant statute and regulations.

## S.D. Codified Laws Ann. § 24–15–8

■ On January 27, 1984, the date Dace became eligible for parole, the relevant parole statute provided:

> When an inmate becomes eligible for parole, he shall be called before the board of pardons and paroles to personally present his application for parole. The board *may* issue an order to the warden of the penitentiary that the inmate shall be paroled if it is satisfied that:
> (1) The inmate has been confined in the penitentiary for a sufficient length of time to accomplish his rehabilitation;
> (2) The inmate will be paroled under the supervision and restrictions provided by law for parolees, without danger to society; and
> (3) The inmate has secured suitable employment or beneficial occupation of his time likely to continue until the end of

the period of his parole in some suitable place within or without the state where he will be free from criminal influences. The board shall fix the time of parole for an inmate.

S.D. *Codified Laws* Ann. § 24–15–8 (1979).[5] (Emphasis added). It should be clear that the statute does not create a protected liberty interest in parole. By establishing that the board "may" issue an order to the warden that the inmate is to be paroled, the statute makes the release of the inmate purely discretionary.[6] Thus, the statute fails to meet the essential mandatory language element of *Greenholtz* and *Parker*.

## S.D.Admin.R. 17:60:02:01–:09

Dace urges that since Rule 17:60:02:01 provides that the Board, in determining whether to grant parole release, "shall" consider and review (1) the inmate's presentation of his or her needs, desires, problems, an evaluation of present progress and plans for the future, (2) all available history of the inmate, and (3) treatment alternatives or other plans for the inmate, it therefore limits the Board's exercise of discretion to grant parole. Dace likewise relies on the listed factors that the Board may consider under Rule 17:60:02:07.[7]

---

5. On July 1, 1985, a new parole statute became effective in South Dakota. It concludes: "Neither this section or its application may be the basis for establishing a constitutionally protected liberty, property or due process interest in any prisoner." S.D. Codified Laws Ann. § 24–15–8 (Supp.1986).

6. *Cf. Nash*, 781 F.2d at 668 (Missouri statutes providing that inmate "may" be transferred from one facility to another and that inmate "may" be furloughed confers no protected liberty interest in transfer or furlough); *Gale*, 763 F.2d at 343 (8th Cir.1985) (amended Missouri parole statute providing that when parole board decides that prisoner can be released without detriment to community or himself, the board "may in its discretion" grant parole does not confer protected liberty interest on prisoner); *Parker*, 750 F.2d at 656–57 (no liberty interest in parole provided by Arkansas statute which states parole board "may" release inmate when he can be released without detriment to community or self); *Irving v. Thigpen*, 732 F.2d 1215, 1217 (5th Cir.1984) (Mississippi statute grants no liberty interest where prisoner "may" be released on parole if he meets substantive criteria); *Williams v. Briscoe*, 641 F.2d 274, 276 (5th Cir.), *cert. denied*, 454 U.S. 854, 102 S.Ct. 299, 70

L.Ed.2d 147 (1981) (no liberty interest under Texas statute stating board "may" recommend parole when certain criteria are satisfied); *Wagner v. Gilligan*, 609 F.2d 866, 867 (6th Cir.1979) (no liberty interest where Ohio board "may" grant parole if interests of justice and society's welfare would be furthered).

7. Rule 17:60:02:07 states:
> The factors to be considered by the board in all hearings on application for parole may include, but shall not be limited to, the following:
> (1) The inmate's personal and family history;
> (2) The inmate's attitude, character, capabilities and habits;
> (3) The nature and circumstances of the inmate's offense;
> (4) The number, nature and circumstances of the inmate's prior offenses, if any;
> (5) The successful completion or revocation of previous probation or parole granted to the inmate;
> (6) The inmate's conduct in the institution, including efforts directed toward self-improvement;

A review of these regulations, however, reveals that as with the parole statute, nowhere is a prisoner's *release* mandated upon the satisfaction of specific substantive criteria. Dace contends that mandatory language similar to that found in *Greenholtz* is not necessary to the establishment of a protected liberty interest. We think this argument is clearly refuted by *Greenholtz*. In that case, the Court noted that an inmate's request for parole "shall" be granted under the Nebraska statute "unless:"

> (a) There is a substantial risk that he will not conform to the conditions of parole; (b) His release would depreciate the seriousness of his crime or promote disrespect for law; (c) His release would have a substantially adverse effect on institutional discipline; or (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.

Neb.Rev.Stat. § 83–1,114(1) (1979) (cited in *Greenholtz*, 442 U.S. at 11, 99 S.Ct. at 2106). Similarly, in *Evans v. Dillahunty*, this court found that if certain criteria set forth in the federal parole statute were met, then the petitioner acquired a liberty interest. 662 F.2d at 526. That statute provides:

> If an eligible prisoner has substantially observed the rules of the institution * * and if the Commission * * * determines: (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare; [then] subject to the * * guidelines promulgated by the Commission * * *, such prisoner *shall* be released.

18 U.S.C. § 4206(a) (1982) (emphasis added). These criteria not only placed substantive limitations on the officials' discretion, but they directed that the prisoner be released upon satisfaction of certain criteria. *See also Clark v. Brewer*, 776 F.2d 226, 231 (8th Cir.1985) (policy statements permitting placement of prisoners in close management if their "continued presence in the general population poses a threat to life, property, self, staff, or other inmates, [or] to the security or orderly running of the institution, or [if there exists] the medical necessity for such segregation"); *Parker*, 750 F.2d at 658 (Arkansas regulation listing factors to take into account in determining suitability for parole).

■ We agree that the mandatory portions of the South Dakota parole regulations provide some limitations on the parole board's discretion. *See* S.D.Admin.R. 17:60:02:01. They provide for a hearing, consideration of the inmate's history, and consideration of treatment possibilities and plans for the inmate. However, these mandates are directed toward the factors the board must take into consideration, and do not mandate the inmate's ultimate release. Even if the mandatory criteria are satisfied, the parole board maintains the ultimate discretionary authority to grant or deny the parole release. We conclude South Dakota's regulations created no liberty interest in parole.[8]

> (7) The inmate's understanding of his own problems and his willingness to work towards overcoming them;
> (8) The inmate's total personality as it reflects on the possibility that he will lead a law-abiding life without harm to society;
> (9) The inmate's family and marital circumstances and the willingness of the family and others to help the inmate upon release on parole from the institution;
> (10) The soundness of the parole program and whether it will promote the rehabilitation of the inmate;
> (11) The inmate's specific employment and/or plans for further formal education;
> (12) The inmate's plans for additional treatment and rehabilitation while on parole;

> (13) The effect of the inmate's release on the community;
> (14) The effect of the inmate's release on the administration of justice; and
> (15) The effect of the inmate's release on victims of crimes committed by the inmate.
> S.D.Admin.R. 17:60:02:07 (1979).

**8.** We feel compelled to respond briefly to the dissent of Judge Arnold. We do so, not for the sake of argument, but because of concerns that his analysis is likely to lead to more confusion in an already complex field of understanding. First, his basic disagreement with the Supreme Court as to the meaning of "liberty" fails to recognize, as in the definition of property, that state law regarding the parole of state prisoners

Accordingly, we hold that Dace had no protected liberty interest in his parole. The July 22, 1986, decision of this court is therefore vacated and the judgment of the district court is affirmed.

ARNOLD, Circuit Judge, with whom HEANEY, Circuit Judge, joins, dissenting.

The plaintiff, Troy Dace, is in jail, and, like most people in that condition, he wants out. The State of South Dakota has decided not to let him out, but will not say why. That is the uncomplicated fact situation that gives rise to this case.

Dace loses his plea today not because the fairness of the State's procedures for determining his liberty or the lack thereof measure up to the Federal Constitution, but because his case does not involve "liberty" at all, as that word is used in the Due Process Clause of the Fourteenth Amendment. For those who speak English, this is not an easy holding to understand. The whole issue in a system of parole is whether a prisoner, validly convicted and incarcerated, shall be set free before the expiration of his term. If parole is granted, the prisoner is given liberty. If it is denied, he is not. One would have thought that it would be the easiest thing in the world to determine that the prisoner's "liberty" is at stake in this situation. On this view, the focus of cases such as this would be on the phrase "without due process of law." The basic question would be what process is due, and no time would be spent analyzing the niceties of state statutes and regula-

tions to determine whether the decision to let someone out of jail, or keep him in, involves "liberty."

This view of the Due Process Clause, which I recognize is now out of date, seems to me more faithful to what the framers of that great provision had in mind. As Mr. Justice Frankfurter once put it, "The right to be heard before being condemned to suffer grievous loss of any kind ... is a principle basic to our society." *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 149, 168, 71 S.Ct. 624, 636, 646, 95 L.Ed. 817 (1951) (concurring opinion). A similar view was advocated by Mr. Justice Powell, concurring in part and dissenting in part in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 18, 99 S.Ct. 2100, 2109, 60 L.Ed.2d 668 (1979). *Greenholtz* is the fountain of Supreme Court doctrine on the application of the Due Process Clause to discretionary parole-release determinations, and all of the cases that have followed it are essentially explications of the Court's opinion in *Greenholtz*, which, as Chief Judge Lay's opinion for our Court today makes clear, turns the existence of federal constitutional protection on the particular words of state statutes and regulations. Justice Powell would have taken a different tack:

> I do not believe ... that the applicability of the Due Process Clause to parole-release determinations depends upon the particular wording of the statute govern-

defines the meaning of liberty. *See Greenholtz*, 442 U.S. 1, 99 S.Ct. at 2101. His disagreement is with the Supreme Court not this court, which of course must adhere to the law set forth by the Supreme Court.

Second, his application of *Greenholtz* fails to recognize that before a liberty interest is established, in the factual context involved, the state *must* create "an expectancy of release." The fact that particularized criteria must be considered by the Board as explained, does not create a situation of mandatory release. In that sense, the present case is clearly distinguishable from *Greenholtz.*

Finally, the dissent suggests a liberty interest may exist when a state prisoner is denied parole by exercising free speech. It indicates this sets forth an internal contradiction of constitutional principles. In all due respect, this simply is not

so. First such an unusual factual hypothesis is clearly not germane to our discussion. The alleged internal contradiction is self-constructed. More importantly, it overlooks the well established principle that when first amendment interests are at issue under the fourteenth amendment, it is the first amendment right that is being vindicated through incorporation under the due process clause. *Cf. Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). As Judge Alvin Rubin has succinctly observed, although substantive due process may provide "a quantitative component" of the Bill of Rights, the "component is derived from the nature of the right violated, not from the due process clause." Rubin, *Deprived of Due Process: The Fourteenth Amendment and Abuse of Power*, 16 N.M.L.Rev. 199, 212 (1986).

ing the deliberations of the parole board....

442 U.S. at 18, 99 S.Ct. at 2109. He would have held simply that

> when a State adopts a parole system that applies general standards of eligibility, prisoners justifiably expect that parole will be granted fairly and according to law whenever those standards are met. This is so, whether the governing statute states, as here, that parole "shall" be granted unless certain conditions exist, or provides some other standards for making the parole decision.

*Id.* at 19, 99 S.Ct. at 2110.

Consider for a moment the anomalies that the *Greenholtz* doctrine have produced. Parole cases, and many other kinds of cases dealing with the treatment of prisoners, now depend completely upon choices made by the states and their administrative agencies. If the state decides to publish no criteria whatever for the granting or withholding of parole, prisoners who are not paroled are not deprived of their "liberty" in a federal constitutional sense. Only if a state does publish criteria and give certain assurances, the degree of specificity of which is not easy to define, will the protections of the Fourteenth Amendment come into play. Thus, the existence of a federal constitutional right is at bottom only a matter of grace for a state to grant or deny. I can understand such a holding with respect to "property," also protected by the Due Process Clause, because this word naturally refers to a pre-existing system of law, common law at first, and now increasingly statutory, laid down by the states in their capacity as residual sovereigns governing most of the day-to-day relationships of citizens. "Property" is a legal category. The word describes a legal relationship: the right of one person to exclude others from the possession and enjoyment of a certain thing. "Liberty," however, like "life," sounds more like a reference to a simple fact than to a legal conclusion or relationship. If someone is in jail, he is not at liberty. If he is released on parole, he is at liberty, at least to a greater extent than people still in jail. Yet, in the present state of legal doctrine set out in Supreme Court opinions, and therefore binding on us, many cases of liberty are decided as if they were property cases, wholly dependent on local law. Perhaps that is why court opinions interpreting the Due Process Clause often speak not of "liberty" as such, but rather of "liberty interests."

All of this is by way of gratuitous comment in the present legal context. The Court's opinion today is quite right in applying current doctrine. It is quite wrong, though, in my view, in reaching the result it does. The question comes down to this: Has the State of South Dakota, either in its statutes or its regulations, established "particularized standards or criteria [that] guide [its] decisionmakers"? *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 467, 101 S.Ct. 2460, 2466, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring), quoted with approval in *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). If such particularized standards or criteria do exist, Dace has a right to expect that they will be followed, and he also has a right to procedures that will make it likely that they will be followed. Here, as the panel opinion explains, *Dace v. Mickelson*, 797 F.2d 574, 577–78 (8th Cir.1986), the administrative regulations governing parole do provide substantive guidance for board decisionmaking. Certain criteria *must* be considered, including "all available history, medical, social and psychological information, past and present difficulties, institutional adjustment and progress of the inmate and treatment possibilities or other plans for the inmate." A.R.S.D. 17:60:02:01. Of course the decision is still discretionary, in the sense that the very existence and significance of these criteria are subject to informed professional judgment, but it still must be admitted that the regulation confines official decisionmakers and does not leave them completely free to do whatever the Board of Pardons and Parole may wish. Parole is not a matter of whim, but rather of discretion guided by substantive criteria. If the criteria seem vague and unspecific, leaving a great deal of room for judgment, the same is true of the Nebraska statute held to create a liberty interest in *Greenholtz*. This statute referred, among other

things, to the following factors: Whether there is a substantial risk that an inmate would not conform to the conditions of parole; whether release would promote disrespect for law; and whether continued correctional "treatment" would substantially enhance the inmate's capacity to lead a law-abiding life when released at a later date. If these are substantive criteria, and the Court concedes that they are, *ante* at 1282, where is the line that distinguishes them from the criteria required by the regulation in effect in the present case? I do not see such a line.

This is not a case, then, in which the inmate must contend that the mere existence of state-created procedures creates a constitutionally protected liberty interest. Here, rather, the state has voluntarily chosen to go beyond mere procedure and to set forth certain criteria or factors that *must* be considered. If, to take an example, the state should deny parole and, while doing so, state explicitly that it had not considered the inmate's institutional adjustment and progress, the regulation would be violated, and the inmate would presumably be entitled to some kind of relief under the state's equivalent of the Administrative Procedure Act. Discretion, though present, would have been abused. One of the traditional meanings of abuse of discretion is a decision taken without considering some significant factor that the law makes relevant. But under this Court's decision today, neither Dace nor anyone else will ever know whether the Board of Pardons and Parole did consider all of the factors that state law required it to consider. This is so because the Board is not required by state law to give reasons for its decision, and because it has refused to do so. For a government to keep someone in jail without giving a reason is one of the earmarks of tyranny.

If Dace were to allege that his parole had been denied because of some political belief, or because he had pointed out some wrongdoing by prison officials, I suppose the Court would have little trouble reaching the conclusion that a claim had been stated under the Due Process Clause of the Fourteenth Amendment. Yet, the federal constitutional right involved in such a case would derive from the very clause, the Due Process Clause of the Fourteenth Amendment, that the Court today holds completely inapplicable. This is an internal contradiction in constitutional doctrine to which I cannot subscribe. If Dace's interest in being released on parole is "liberty" when he claims that release has been denied for some constitutionally forbidden reason, why is it not also "liberty" when he claims simply that fair procedures have not been followed? The two aspects of due process are intimately related. For without fair procedures, the likelihood that parole and other governmental decisions will be made for constitutionally impermissible reasons is greatly increased. Dace's parole may well have been denied for reasons that everyone would acknowledge as good and acceptable, but neither he nor anyone else can ever know that if the law remains as the Court has announced it today. Compare *Cafeteria & Restaurant Workers Local Union v. McElroy*, 367 U.S. 886, 901, 81 S.Ct. 1743, 1751, 6 L.Ed.2d 1230 (1961) (Brennan, J., dissenting, joined by Warren, C.J., Black and Douglas, JJ.).

For these reasons, as well as those stated in more detail in the panel opinion, I respectfully dissent.

### ON REHEARING

The petition for rehearing en banc is denied. The Motion to Intercede and Complaint in Mandamus is denied. The denial of the motion to intercede and for mandamus is entered without prejudice to the right of petitioner to appeal the district court's order of May 27, 1987. If petitioner chooses to appeal the dismissal, he must do so within 30 days of the date of the judgment. It is so ordered.

Editor's Note: The opinion of the United States Court of Appeals, Ninth Circuit, in *Henderson v. United States*, published in the advance sheet at this citation, 816 F.2d 1285–1296, was withdrawn from bound volume pending issuance of a revised opinion.