**Paul Edward DAUTREMONT, Appellant,**

v.

**BROADLAWNS HOSPITAL, et al., Appellees.**

No. 86–1977.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1987.

Decided Aug. 20, 1987.

Rehearing and Rehearing En Banc Denied Sept. 24, 1987.

Chris C. Foy, student of University of Iowa College of Law, Iowa City, Iowa, for appellant.

John E. Swanson, Des Moines, Iowa, for appellees.

Barbara A. Schwartz, Iowa City, Iowa, for rebuttal.

Before ROSS[*], Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The plaintiff, Paul Dautremont, appeals from the district court's[1] order granting summary judgment in favor of the defendants, Broadlawns Hospital and two of its employee doctors, in this action brought pursuant to 42 U.S.C. § 1983. Dautremont's pro se complaint was construed to contend that he was denied due process during three involuntary hospitalizations at the municipal hospital's mental ward when officials administered psychotherapeutic drugs against his will while he was hospitalized for unnecessarily extended periods of time. The district court ruled that his claims with respect to the first and second hospitalizations were time barred by Iowa's six-month statute of limitations governing actions against municipal employees. With respect to the third hospitalization, the court ruled that he was afforded all the process required by state law and that he failed to advance his argument that he was

---

[*] The Honorable Donald R. Ross, United States Circuit Judge for the Eighth Circuit Court of Appeals at the time this case was submitted, assumed senior status on June 13, 1987, before this opinion was filed.

1. The Honorable William C. Stuart, United States Senior District Judge for the Southern District of Iowa.

administered drugs inconsistently with the procedures set forth in the Iowa Code. On appeal, Dautremont contends that (1) the court erred in relying on documents that do not comply with the requirements of Fed.R. Civ.P. 56(c) and (e); (2) the court applied the incorrect statute of limitations; and (3) the court erred in failing to decide whether his hospitalization and treatment complied with due process. For reasons different than those stated by the district court, we affirm.

## I. BACKGROUND

Dautremont's first involuntary hospitalization occurred on August 30, 1979 after he allegedly assaulted his father. A judicial referee found him to be seriously mentally impaired and ordered him committed for psychiatric evaluation and treatment. He was discharged September 28, 1979 and officially placed on outpatient status on October 2, 1979. Thereafter, Dautremont ran away to Oklahoma, where on December 23, 1979 he was involuntarily committed. He was released to his parent's custody on February 14, 1980, and on that same day readmitted to Broadlawns. The parties refer to his readmission to Broadlawns as the second hospitalization. He was discharged on February 28, 1980 and instructed to attend group therapy. On December 9, 1982 a referee found him to be no longer mentally impaired. Almost one year later, on November 23, 1983, Dautremont filed this action pro se. He was hospitalized for the third time two days later on November 25, 1983 after he contacted the Secret Service and threatened to assassinate the President of the United States. A referee found him to be seriously mentally impaired and ordered him committed for evaluation and treatment. He was discharged on January 4, 1984 and placed on outpatient status.

Dautremont's amended pro se complaint was liberally construed by the court to allege that he was forced to take psychotherapeutic drugs against his will while he was confined at the hospital for a period of time that was unconstitutionally extended. The district court ordered the defendants to undertake a review of the facts and circumstances surrounding Dautremont's complaint and to file with the court a detailed written report setting forth their position on the matter. The defendants complied with the court's directive and, in addition to the report, filed a motion to dismiss the complaint. The court appointed counsel to represent Dautremont and treated the motion as one for summary judgment in light of the report and the exhibits attached thereto.

The district court granted summary judgment in favor of the defendants and Dautremont has appealed. For the reasons set forth below, we affirm.

## II. DISCUSSION

Dautremont first contends that the court erred in relying on documents that do not comply with Fed.R.Civ.P. 56(c) and (e). Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) provides, in part, that "[s]upporting and opposing affidavits shall be made on personal knowledge." Dautremont argues that summary judgment was improper here because the record does not contain depositions, answers to interrogatories, admissions, or affidavits. The only pleading, other than the complaint, is the answer, which is unverified. The report filed by the defendants' counsel on request of the court, Dautremont adds, is unverified and unauthenticated. Further, the report cannot be considered an affidavit because the information set forth therein is not based on the personal knowledge of its signatories—the defendants' attorneys. Therefore, Dautremont concludes, the district court erred in relying on those documents. We disagree.

First, Dautremont failed to raise the issue in the district court. This may seem harsh at first glance, but we note that Dautremont had appointed counsel who resisted the motion to dismiss and the motion for summary judgment, but failed to object to the lack of certain documents or the

deficiencies of others. *See Chambers v. United States,* 357 F.2d 224, 228 (8th Cir. 1966) (absent timely objection, trial court may consider documents that do not conform to the formal requirements of Rule 56(e)). Second, Dautremont has not challenged the authenticity of any documents in the record. That is, he does not allege and we have no reason to believe the documents in fact are not authentic. Therefore, we fail to see how Dautremont was prejudiced by unauthenticated or unverified documents. Dautremont has failed to demonstrate reversible error.

Dautremont next contends that the court erred in applying the six-month statute of limitations to his claims concerning the first and second hospitalizations. We agree. Nevertheless, the record demonstrates as a matter of law that Dautremont is not entitled to relief on those claims.

The usual rule is that statute of limitations issues in federal cases should be decided in accordance with law existing at the time of the decision. *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981). In 1985, prior to the district court's decision in this case, the Supreme Court held that the applicable statute of limitations in an action brought pursuant to § 1983 is the state's limitations statute that governs personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). Iowa's limitations period for personal injury actions is two years. Iowa Code Ann. § 614.1.2 (Supp.1987).

Dautremont maintains that his claims concerning the first and second hospitalizations accrued when he was released from the hospital in September 1979 and February 1980, respectively. Dautremont filed this action more than two years later on November 23, 1983. It would follow, then, that this action is untimely with respect to those claims if Iowa's two-year personal injury limitations period is applied here. In other words, Dautremont's claims are barred if *Wilson* is applied retroactively.

The decision to apply *Wilson* retroactively turns on the particular facts of each case. *See, e.g., Jane Does 1–100 v. Omodt,* 813 F.2d 910 (8th Cir.1987) (not applied retroactively); *Ridgway v. Wapello,* 795 F.2d 646 (8th Cir.1986) (not applied retroactively); *Wycoff v. Menke,* 773 F.2d 983 (8th Cir.1985) (applied retroactively), *cert. denied,* 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986). As the court in *Ridgway* explained, the facts should be considered in light of the three factor test—commonly referred to as the reliance, purpose, and inequity factors—set forth in *Chevron Oil v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971). *Ridgway,* 795 F.2d at 647. After carefully analyzing these factors, we hold that *Wilson* should be applied retroactively to Dautremont's claims concerning the first hospitalization, but not to his claims concerning the second hospitalization.

Dautremont cannot be said to have reasonably relied on anything but a two-year limitations period in considering when to assert his claims concerning his first hospitalization. To be sure, *Wilson* overruled clearly established precedent in this circuit, *Garmon v. Foust,* 668 F.2d 400 (8th Cir.) (en banc), *cert. denied,* 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982), in which we held that Iowa's "catchall" five-year limitations period governed § 1983 actions. Although *Wilson* changed the rule that *Garmon* had established, Dautremont cannot be said to have relied on *Garmon* as could the plaintiffs in *Ridgway* and *Omodt*. *See Ridgway,* 795 F.2d at 647; *Omodt,* 813 F.2d at 911. Unlike the plaintiffs' claims in those cases, Dautremont's claims concerning the first hospitalization were already precluded by Iowa's personal injury statute of limitations when we decided *Garmon*. Dautremont's claims accrued in September 1979 and the two-year period ran in September 1981. We decided *Garmon* on January 5, 1982. Therefore, the reliance factor favors applying *Wilson* retroactively.

Moreover, it would not be inequitable to impose the two-year limitations period on Dautremont's claims concerning the first hospitalization. At the time his claims ac-

crued and before our decision in *Garmon*, the law both nationally and in this circuit was inconsistent and confusing. In addition, during this same time, the Southern District of Iowa was applying a two-year statute of limitations to § 1983 claims. *Wycoff v. Menke*, 773 F.2d at 986. Thus, Dautremont could not have relied on any period longer than two years and, accordingly, it is not inequitable to hold him to such a period.

As to the purpose factor, retroactive application of *Wilson* in the circumstances of this case promotes the uniformity and certainty the *Wilson* decision sought to create. Although the ultimate decision to apply *Wilson* retroactively is inconsistent with the ultimate decisions in *Ridgway* and *Omodt*, our analysis is consistent with the analyses employed by the court in those cases and in *Wycoff.*

Accordingly, we apply *Wilson* retroactively to the claims concerning the first hospitalization. This does not end our inquiry, however, because Dautremont raises a tolling issue.

Dautremont maintains that a fact issue exists as to whether he was mentally disabled for the purposes of Iowa's tolling statute. That statute provides that "[t]he times limited for actions herein ... shall be extended in favor of ... mentally ill persons, so that they shall have one year from and after the termination of such disability within which to commence said action." Iowa Code Ann. § 614.8 (Supp.1987). Dautremont argues that the limitations period was tolled until December 9, 1982, the first date after his initial hospitalization on which he was found to be no longer mentally impaired. Dautremont asserts that pursuant to the tolling statute he had one year from that date in which to file suit, which he did on November 23, 1983. Dautremont's arguments are unpersuasive.

■ While the issue whether a person is mentally ill for purposes of the tolling statute is factual, the record before us demonstrates as a matter of law that the tolling statute is inoperative in the circumstances of this case. We cannot simply presume that because Dautremont was found to be mentally impaired he was mentally ill for the purposes of the tolling statute. To the contrary, Iowa Code Ann. § 229.27 provides:

> Hospitalization of a person under this chapter, either voluntarily or involuntarily, does not constitute a finding of nor equate with nor raise a presumption of incompetency, nor cause a person so hospitalized to be deemed a person of unsound mind nor a person under a legal disability for any purpose including ... [§] 614.8 [the tolling statute].

The record shows that Dautremont was cognizant of his rights during the first hospitalization. And although any attempt to file a complaint asserting those rights might have been hampered while he was confined during the first hospitalization, nothing prevented him from filing such a complaint after his release. Yet he failed to do so. While his Oklahoma hospitalization and his second hospitalization at Broadlawns might have prevented him from filing a complaint, again he failed to do so for more than three years after his release. Moreover, the fact that Dautremont initiated this lawsuit two days before he was hospitalized and found to be seriously mentally impaired for the third time demonstrates that his recurring mental impairment did not prevent him from filing a complaint concerning the defendants' conduct during his hospitalization.[2] Accordingly, we hold that the tolling statute is inapplicable here and therefore Dautremont's claims concerning the first hospitalization are time barred.

■ We need not address the tolling issue with respect to his claims concerning the second hospitalization, however, because we hold that those claims are not time barred. Again, Dautremont's claims concerning the second hospitalization accrued in February 1980. Consequently, his claims are similar to those in *Ridgway* and

2. All the hospital reports consistently indicate that Dautremont suffers from schizophrenia, paranoid type.

*Omodt* in that they were not already precluded by Iowa's two-year personal injury statute at the time we decided *Garmon. Omodt,* 813 F.2d at 911; *Ridgway,* 795 F.2d at 647. When we decided *Garmon,* Dautremont had more than a month in which to timely file his complaint within the two-year period. Therefore, Dautremont was entitled to rely on *Garmon's* rule that Iowa's "catchall" five-year statute of limitations would apply. As we noted in *Ridgway* and *Wycoff,* it would be inequitable to hold otherwise. Accordingly, we hold that the *Chevron* factors dictate that *Wilson* should not be applied retroactively to bar Dautremont's claims concerning the second hospitalization.[3]

We conclude, therefore, that Dautremont's claims are timely and that the district court erred in holding otherwise. Nevertheless, it is unnecessary to remand the case to the district court because the record demonstrates as a matter of law that Dautremont is not entitled to relief.

■ Dautremont maintains that the record is devoid of any evidence that the defendants complied with Iowa law governing the involuntary hospitalization of mental patients during his second hospitalization. But violations of state law, without more, are not actionable in federal court. The issue confronted by a federal court in a case pursuant to § 1983 in the circumstances of this case is whether the municipal officials' conduct was consistent with federal due process. And, as the district court noted, minimum due process requires that "clear and convincing proof" of an individual's mental illness and need for

hospitalization must be presented before that individual may be committed for an indefinite period in a mental hospital. *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1978).

■ The record demonstrates that Dautremont was provided a hearing during which such evidence was presented. Although it is unclear whether Dautremont was given such a hearing by Iowa officials prior to his second hospitalization at Broadlawns, the record demonstrates that he was afforded a hearing by Oklahoma officials prior to his hospitalization in that state. *See* Okla.Stat.Ann. tit. 43A, § 5–205 I (West Supp.1987).[4] His second hospitalization at Broadlawns was merely a continuation of the Oklahoma hospitalization. The Oklahoma hospital discharge papers indicate that Dautremont's discharge was conditioned on his readmission to an Iowa hospital.[5] Therefore, the pre-Oklahoma hospitalization hearing provided Dautremont all the process he was due in these circumstances.

■ Dautremont's claim that he was denied due process when the defendants administered psychotherapeutic drugs against his will after he was readmitted to Broadlawns is without merit. As we recently said in *Lappe v. Loeffelholz,* 815 F.2d 1173, 1176–77 (8th Cir.1987), "[t]here is no question but that once these procedures [a hearing, findings, and a court order directing that the individual be hospitalized] were complied with, and while [the individual] was an inpatient at the [hospital, the hospital officials] could prescribe intramuscular injections of psychotropic

---

**3.** We recognize that for the sake of uniformity and consistency the purpose factor might dictate applying *Wilson* retroactively as we did to Dautremont's claims concerning his first hospitalization. But to do so, would be to ignore the analysis employed in *Omodt, Ridgway,* and *Wycoff.* In any event, the reliance and inequity factors clearly outweigh the purpose factor here.

**4.** If the hearing was conducted pursuant to the prior statute, *see* Okla.Stat.Ann. tit. 43A, § 54.1 (West 1979), the requisite proof of Dautremont's mental impairment was more stringent than that required by *Addington.* Section 54.1 required proof beyond a reasonable doubt.

**5.** The Oklahoma hospital discharge papers indicate that Dautremont was released only as a result of his parents' request. "His parents came to visit him, and then they asked that he be released to them in order to be placed in a hospital in Iowa. The patient's family came and picked up the patient and he was discharged to his parents to be placed in a state hospital in Iowa." Two other references to the subsequent hospitalization in Iowa are made in the discharge papers under "Employment Status" and "Follow-up Recommendations."

medication despite [the individual's] wishes." *See* Iowa Code Ann. § 229.23 ("The patient's right to refuse treatment by chemotherapy shall also not apply during any period of custody authorized by the court pursuant to section 229.13 [hospitalization after hearing] or 229.14 [continued hospitalization]."). Once Dautremont was found to be clearly and convincingly mentally ill, the Oklahoma state officials could treat him with psychotherapeutic drugs and the Iowa municipal officials could continue that treatment against his wishes.[6] *See infra* pp. 299–300. Therefore, Dautremont is not entitled to relief on the claims concerning his second hospitalization.

Dautremont does not contend that he was denied an *Addington* hearing prior to being committed indefinitely for the third time. Rather, he contends that the Iowa commitment statutes create certain liberty interests that are protected by the Due Process Clause of the Fourteenth Amendment, *see Rogers v. Okin*, 738 F.2d 1, 5–9 (1st Cir.1984) (the Due Process Clause provides procedural protection to involuntarily committed mental patients for state-created substantive liberty interests); *see generally Board of Pardons v. Allen*, — U.S. ——, 107 S.Ct. 2415, 2422, 96 L.Ed.2d 303 (1987) (state parole statute creates liberty interest protected by the Due Process Clause); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11–12, 99 S.Ct. 2100, 2105–06, 60 L.Ed.2d 668 (1979) (same), and that the defendants violated those liberty interests during his third hospitalization.

Dautremont describes the liberty interests that are allegedly created by Iowa law in terms of rights and entitlements. First, he contends that the state commitment statutes provide mental patients the right to refuse chemotherapy during the pre-*Addington* hearing period and that they are entitled to have their refusals honored unless the chemotherapy is "necessary to preserve [their] life or to control behavior that is likely to result in physical injury to [them] or others if allowed to continue." Iowa Code Ann. § 229.23.2 Dautremont argues that he was administered psychotherapeutic drugs against his will prior to his commitment hearing during the third hospitalization and that the record does not indicate that the medication was necessary to preserve his life or to prevent injury to himself or others. Dautremont's argument is without merit.

■ Even assuming that the Iowa statutes create a liberty interest as Dautremont has described it, that interest was not violated here. It is undisputed that the third hospitalization was precipitated by his communication to the Secret Service of his threat to assassinate the President of the United States. The record demonstrates that it was Dautremont's belief that the President committed treason by allowing physicians to administer psychotherapeutic drugs to mental patients. It is also undisputed that Dautremont purposely cut his finger with a juice can and wrote "Treason R.R." on the wall of the Iowa State University Union while waiting to meet a Secret Service Agent. Clearly, the record shows that Dautremont was both a danger to himself and to others and the administration of medication against his will was justified. Therefore, according to Dautremont's own argument the alleged liberty interest was not violated.

Second, Dautremont contends that pursuant to the Iowa commitment statutes, mental patients are entitled to release at the expiration of the statutory fifteen-day period that follows the commitment hearing, unless the chief medical officer submits a report to the court requesting an extension for psychiatric evaluation and receives an order to that effect. Iowa Code Ann. §§ 229.13, 229.14, 229.15. He concedes that such a report was submitted and the respective order granted, but argues that the report was not stated with the requisite particularity mandated by Iowa Supreme Court Rule 25 (on Hospitalization of Men-

---

6. The Oklahoma hospital discharge papers indicate that he was administered psychotherapeutic drugs during his hospitalization and that he was prescribed these same drugs upon his release to his parents so that he could be readmitted to Broadlawns.

tally Ill). Dautremont maintains that he was entitled to have such a report submitted before he could be held beyond the statutory fifteen-day period. We disagree.

The cases that recognize state-statutorily-created liberty interests that are protected by the Due Process Clause of the Fourteenth Amendment make it clear that (1) the statute must contain "particularized substantive standards or criteria" that guide state officials and (2) the statute must use "mandatory" as opposed to "discretionary" language in describing the limits the standards or criteria have on the officials' conduct. *See Parker v. Corrothers,* 750 F.2d 653, 656 (8th Cir.1984) (citing *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), and *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)). Dautremont argues that a liberty interest is created as a result of the mandatory language of the statutes and Rule 25, which describe the report that is to be filed with the court. We disagree. We need not decide whether the Iowa commitment statutes contain the requisite particularized substantive standards or criteria because we hold that the statutes, contrary to Dautremont's argument, do not use the requisite mandatory language in describing limits on the state officials' conduct.

The ultimate liberty interest in the circumstances of this case—Dautremont's release—is subject to the court's discretion. When, as in this case, the chief medical officer files a report with the court requesting continued confinement or treatment, "the court may" order the appropriate confinement or treatment. *See* Iowa Code Ann. §§ 229.14.2 ("the court may order the respondent's continued hospitalization for appropriate treatment"), 229.-14.3 ("the court may enter an order directing the respondent to submit to the recommended treatment"), 229.14.4 ("an alternative placement may be arranged upon consultation with the chief medical officer and the approval of the court"). These subsections of section 229.14 make it clear that the court may or may not, for those reasons stated in the report or for any other reason, order the continued confinement or treatment of the mental patient. Thus, the mental patient's release is subject to the court's complete discretion.

Indeed, the statute and corresponding Rule 25 contain some mandatory language, but in this respect the statute and rule are similar to the South Dakota parole regulations that we recently examined in *Dace v. Mickelson,* 816 F.2d 1277 (8th Cir.1987) (en banc). There we acknowledged that portions of the regulations were mandatory, but concluded that those portions did not mandate the inmate's ultimate release. *Id.* at 1282. In concluding that the regulations did not create a liberty interest, we stated: "Even if the mandatory criteria are satisfied, the parole board maintains the ultimate discretionary authority to grant or deny the parole release." *Id.* The same is true with the Iowa commitment statutes and Supreme Court Rule 25. Even if the mandatory medical reports are filed with the court, the ultimate discretionary authority to grant or deny the mental patient's release rests with the court. Therefore, it is irrelevant whether the medical report states with particularity the reasons for requesting a continuation of confinement or treatment. Once the report requests a continuation, the ultimate liberty interest—release—is subject to the discretion of the court. Accordingly, we conclude that the Iowa commitment statutes create no liberty interest in release when the medical report requests a continuation of confinement or treatment.[7]

---

7. The Iowa commitment statutes might arguably create such a liberty interest in release when the chief medical officer's report to the court states that the patient does not require further treatment for a serious mental impairment. *See* Iowa Code Ann. § 229.14.1 ("If the report so states, the court shall order the respondent's immediate release from involuntary hospitalization and terminate the proceedings."). We need not decide this issue, however, because it is undisputed that the medical report in question requested a continuation of Dautre-

Dautremont also contends that the Due Process Clause of the Fourteenth Amendment by itself, without reference to state law, protects involuntarily committed mental patients from being administered psychotherapeutic drugs against their will. He relies on the Supreme Court's statement in *Youngberg v. Romeo*, 457 U.S. 307, 316, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1982) that "[l]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *See Board of Pardons v. Allen*, 107 S.Ct. at 2418 n. 3 ("There is far more to liberty than interests conferred by language in state statutes."); *Mills v. Rogers*, 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982) (in light of dispositive state law issues, the Court declined to decide the issue whether involuntarily committed mental patients have a constitutional right to refuse treatment with antipsychotic drugs). Dautremont argues that it necessarily follows that involuntarily hospitalized mental patients retain a liberty interest in refusing psychotherapeutic drugs, which have a greater adverse effect on an individual than mere bodily restraints.

■ But Dautremont's argument overlooks the key language of the Supreme Court's statement in *Youngberg*—"protected by the Due Process Clause from *arbitrary governmental action.*" The record before us demonstrates that the state officials' conduct was not arbitrary. In fact, the record indicates that the decisions to administer psychotherapeutic drugs against Dautremont's will were made by professionals exercising their professional judgment in light of the circumstances precipitating his hospitalization and in light of the evidence of his serious mental impairment presented at the commitment hearing. *See generally, Youngberg*, 457 U.S. at 321–22, 102 S.Ct. at 2461 ("the Constitution only requires that the courts make certain that professional judgment in fact was exercised"). The interests of the state weigh heavily in restraining and treating an assaultive person vis-a-vis that person's individual right to refuse treatment.

First, during the pre-*Addington* hearing period Dautremont was administered psychotherapeutic drugs to prevent possible injury to himself or others in light of his threat to assassinate the President and in light of his demonstrated ability to willfully injure himself. The chief medical officer's decision to administer the drugs in these circumstances certainly was not arbitrary. Had the circumstances been different, the chief medical officer might have decided against administering the drugs to Dautremont. Second, the administration of psychotherapeutic drugs during the statutory fifteen-day period and subsequent extensions was the result of the chief medical officer's judgment in light of the clear and convincing proof of Dautremont's serious mental impairment. Again, the decision to administer the drugs certainly was not arbitrary.

Moreover, the issue here is not simply whether a liberty interest has been infringed, but whether that infringement amounts to a violation of due process. *Youngberg*, 457 U.S. at 320, 102 S.Ct. at 2460. To decide this issue, "it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society.'" *Id.* (quoting *Poe v. Ullman*, 367 U.S. 497, 542, 81 S.Ct. 1752, 1776, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting)). Dautremont's liberty from bodily restraint, and therefore, arguably, mental restraint, survives involuntary commitment. *Id.* 457 U.S. at 316, 102 S.Ct. at 2458. But that liberty is outweighed in the circumstances of this case by the government's legitimate objective to return Dautremont's behavior to that which is acceptable to society and by the professionals' reasonable judgment here that that objective can best be accomplished by the administration of certain types and levels of psychotherapeutic drugs. Therefore, we conclude that the infringement of Dautremont's liberty by state officials did not violate due process.

mont's confinement and treatment, subjecting his release to the discretion of the court. The

report did not state that Dautremont no longer required further treatment.

## III. CONCLUSION

We hold that the district court erred in applying the six-month statute of limitations to Dautremont's claims concerning the first and second hospitalizations. Nevertheless, Dautremont's claims concerning the first hospitalization are time barred by the two-year personal injury statute. His claims concerning the second hospitalization are timely, but the record demonstrates that Dautremont was not denied due process. We also hold that Dautremont was not denied due process during his third hospitalization. Accordingly, we affirm.